# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-5

* * * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| IFAFUNKE OLADIGBOLU, *natural mother of decedent*, and ERIC BURTON, *natural father of decedent, E.T.B.,* * * * | |
| Petitioners, * | Chief Special Master Corcoran |
| v. * | Dated: January 2, 2026 |
| SECRETARY OF HEALTH AND HUMAN SERVICES * * | |
| Respondent. * | |

* * * * * * * * * * * * * * * * * * * * * * * *

*Paul Adrian Green,* Law Office of Paul Green, 1055 East Colorado Boulevard, Pasadena, CA, for Petitioners.

*Theodore Van Beek*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION DENYING AWARD OF ATTORNEY'S FEES AND COSTS[1]

On January 3, 2023, Ifafunke Oladigbolu, natural mother of decedent E.T.B., and Eric Burton, E.T.B.'s father, filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petition, dated Jan. 3, 2023 (ECF No. 1) ("Pet."). Petitioners alleged that E.T.B. suffered a Table injury, or alternatively an injury caused-in-fact, of encephalopathy or encephalitis, anaphylaxis, vasovagal syncope, and death, resulting from the adverse effects of several childhood vaccines he received on February 22, 2021. Pet. at 1. Respondent objected to entitlement, however, on the grounds that "Sudden Infant Death Syndrome" ("SIDS") was the most likely explanation for E.T.B.'s death, and Petitioners promptly moved to dismiss their Petition, which I acted upon not long thereafter. Rule 4(c) Report, dated Jan. 3, 2025 (ECF No. 29); Motion to Dismiss, dated Jan. 3, 2025 (ECF No. 30); Decision, dated

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Jan. 8, 2025 (ECF No. 31).

Petitioners have now submitted a motion for an award of attorney's fees and costs (the sole such request they have made in this matter). Motion, dated Aug. 12, 2025 (ECF No. 35) ("Mot."). Petitioners request a total of $15,351.45 ($14,893.00 in attorney's fees, $56.45 in attorney's costs, and $402.00 in petitioners' out of pocket costs). Mot. at 8–9. Respondent challenges Petitioners' motion arguing that Petitioners are not entitled to fees and costs for lack of reasonable basis. *See* Response, dated Aug. 26, 2025 (ECF No. 36). Petitioners filed their reply arguing they had met the reasonable basis standard. *See* Reply, dated Aug. 29, 2025 (ECF No. 37).

For the reasons set forth below, I hereby **DENY** Petitioners' motion.

**ANALYSIS**

**I.      Legal Standard**

Motivated by the desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that fees and costs in Vaccine Act matters may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344; *see also Sebelius v. Cloer*, 133 S.Ct.1886, 1895 (2013) (discussing this goal when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012). It may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that fees be reimbursed for every losing petition. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Thus, there is a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs in a case in which compensation was not awarded only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Even meeting this standard does not guarantee a fee award, since special masters are still empowered by the Act *to limit or deny fees entirely* to unsuccessful litigants. *James-Cornelius ex rel E.J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

The Circuit has established a two-prong test for evaluating the propriety of fees in an unsuccessful case. First, there is a subjective inquiry, in which it is assessed whether the petition was brought in good faith, followed by an objective inquiry, when the claim's reasonable basis is evaluated. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.,* 116 Fed. Cl. 276, 689 (2014)).

"Good faith is a subjective test, satisfied through subjective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020). "[T]he 'good faith' requirement … focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Cases in which good faith has been found to be lacking often involve petitioners who failed to produce or actively concealed evidence undermining their claims. *Purnell-Reid v. Sec'y of Health & Hum. Servs.*, No. 18-1101V, 2020 WL 2203712 (Fed. Cl. Spec. Mstr. Apr. 6, 2020); *Crowding v. Sec'y of Health & Hum. Servs.*, No. 16-0876V, 2019 WL 1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019); *Heath v. Sec'y of Health & Hum. Servs.*, No. 08-0086V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Carter v. Sec'y of Health & Hum. Servs.*, No. 90-3659V, 1996 WL 402033 (Fed. Cl. Spec. Mstr. July 3, 1996). And attorney conduct in prosecuting a claim can be relevant. *Purnell-Reid*, 2020 WL 2203712, at *6.

Assessing reasonable basis, by contrast, involves "an objective test, satisfied through objective evidence." *Cottingham*, 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but [goes] more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Human Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). As the Federal Circuit recently explained, "a reasonable basis analysis is limited to objective evidence, and . . . subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius ex rel E.J.*, 984 F.3d at 1379. Stated differently, a claim that on its face (without any weighing of the evidence) is not supported by the materials required by the Vaccine Act for a special master to be able legally to award compensation does not have a reasonable basis. *Good Game v. Sec'y of Health & Hum. Servs.*, 157 Fed. Cl. 62, 68 (2021).

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirthshafter v. Sec'y of Health & Human Servs.*, 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted, however, that 'a petitioner must furnish *some evidence* in support of the claim.'" *Id.* (quoting *Chuisano*, 116 Fed. Cl. at 288, emphasis added in *Wirthshafter*).

Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham*, 971 F.3d at 1345–46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y Health & Hum. Servs.*, 159 Fed Cl. 328, 333 (Fed. Cl. 2022) ("*Cottingham II*"). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not

3

mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham*, 971 F.3d at 1346). Further, the standard of establishing "more than a mere scintilla of evidence" cannot be met where the evidence is so contrary that a feasible claim is impossible. *Cottingham v. Sec'y of Health & Hum. Servs.*, 154 Fed. Cl. 790, 795 (2021).

Furthermore, determining reasonable basis is not a static inquiry. Reasonable basis which may have existed when a claim was filed can cease to exist as further evidence is presented, revealing the claim's lack of objective support on an ongoing basis. *Perreira*, 33 F.3d at 377. In *Perreira*, the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## II.   Petitioners' Claim Lacked Reasonable Basis

I find that there was no reasonable basis for the claim when the Petition was brought, making a fee award in appropriate.

As the record shows, it was facially evident at the claim's outset that E.T.B. more than likely suffered and perished from SIDS. The medical records filed with Petitioners' Petition provided in this case clearly show a SIDS diagnosis over an encephalopathy or other affliction. There is nothing in the record that would suggest a diagnosis of encephalopathy or encephalitis, anaphylaxis, vasovagal syncope. Petitioners described E.T.B. as a healthy child born without complication, and the record does not reflect any pre-vaccination illnesses, abnormalities, or diagnoses. Pet. at 1; Ex. 1 at 1–11; Ex. 2 at 3.

It was two days after E.T.B.'s vaccinations in 2021 that E.T.B. was found unresponsive after being put down to sleep on his back. Ex. 2 at 3. Provider assessments at the hospital where E.T.B. was taken on February 23, 2021, found vomit in E.T.B.'s airway and stated that E.T.B.'s condition was "[consistent with] SIDS, unclear etiology, consider aspiration or suffocation from positioning." *Id.* at 5, 13. The Alameda County Coroner's Bureau performed an autopsy on February 24, 2021. Ex. 3 at 3. The coroner concluded there was no pathological evidence of vaccine reaction, nor evidence of trauma, anaphylaxis, natural diseases, or toxic substances that could explain E.T.B.'s sudden death. *Id.* at 1, 4–6. Some non-specific findings included perinatal periventricular leukomalacia and microfocal pancreatitis. *Id.* at 5.

Based on this, the autopsy investigation and coroner's report, finalized determined on April 8, 2021, that E.T.B. suffered from an "unexplained sudden death." Ex. 3 at 1, 3, 6. The coroner went out of his way to note that infants do not typically die from vaccination, unless there is evidence of an anaphylactic reaction—which was missing in E.T.B.'s case. *Id*. This absence is also noted in E.B.T's vaccination record and hospital records. Ex. 1 at 1, 10; Ex. 2 at 1–5.

Overall, then, the record establishes that E.T.B. was never formally diagnosed with any of the injuries Petitioners allege, and received no medical treatment that corroborates these alleged injuries. By contrast, evidence that E.T.B. had suffered from SIDS was established in the record. These facts were part of the existing medical record when the case was filed in 2023—two years after E.T.B.'s tragic death. In addition, by the time this matter was initiated, it had been determined in the Program to a reasonably-conclusive level that the claims vaccines can cause SIDS cannot meet the Program's "more likely than not" standard—with the sole outlier case being clearly overturned on appeal. *Boatmon v. Sec'y of Health & Hum. Servs.*, No. 13-611V, 2017 WL 3432329 (Fed. Cl. Spec. Mstr. July 10, 2017) (finding that petitioners presented sufficient evidence and testimony to establish the vaccines their minor child received on September 2, 2011, actually caused his death from SIDS, and entitled them to compensation) *motion for review granted*, 138 Fed. Cl. 566 (July 3, 2018), *aff'd on other grounds,* 941 F.3d 1351 (Fed. Cir. 2019). Since the Circuit's decision in *Boatmon*, no SIDS-based claims have succeeded, and I am aware of no more recent scientific evidence that would suggest such claims warrant another look.

Under such circumstances, this Petition lacked reasonable basis from the outset – the existing record suggested the case could not succeed, given clear Program rejection of similar claims. Thus, I cannot grant an award of fees in this case, even though the reasonable basis standard is quite low. I have routinely cautioned parties that further SIDS claims that could not be meaningfully distinguished from past Program decisions, either on factual grounds or regarding the proffered causation theory, would lack reasonable basis. *See Olsavicky v. Sec'y of Health & Hum. Servs.*, No. 17-1806, 2020 WL 1670707, at *3 (Fed. Cl. Spec. Mstr. Mar. 4, 2020) (granting in part and denying in part Attorneys' Fees and Costs for an unsuccessful SIDS claim); *Frady v. Sec'y of Health & Hum. Servs.*, No. 16-148V, 2017 WL 6942530, at *1 fn. 3 (Fed. Cl. Spec. Mstr. Dec. 12, 2017) (granting fees and costs in an unsuccessful SIDS claim where the claim's weaknesses were not self-evident at its initiation). In *Olsavicky*, the petition had been filed before *Boatmon* was reversed in favor of the Respondent, which meant the factual deficiencies of the claim were not yet fully established at the time (and thus more leniency in evaluating reasonable basis was called for). *Olsaviky*, 2020 WL 1670707 at *4. Here, that is not the case, since this matter was filed several years after *Boatmon*.

I regret having to deny counsel fees for work performed in this matter (and commend him for acting professionally by withdrawing the claim once Respondent noted its deficiencies).[3] But as I have noted in prior cases, it is reasonable to put the onus on counsel to determine whether a claim is appropriately filed—and the concomitant risk that they will be denied fees if a claim is later found to lack reasonable basis. *See Curran v. Sec'y of Health & Hum. Servs.*, No. 15-804V, 2017 WL 1718791, at *4 (Fed. Cl. Spec. Mstr. Mar. 24, 2017). The Program has one of the most

---

[3] I also do not question the good faith in the filing of this matter.

generous fee shifting statutes possible, resulting in payment of fees in numerous losing cases. When a claim so obviously lacks reasonable basis, however, it is fair to deny fees.

## CONCLUSION

Petitioners have failed to provide evidence establishing there was a reasonable basis for filing this claim. **Petitioners' motion for attorney's fees and costs is therefore DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[4]

**IT IS SO ORDERED.**

> **s/Brian H. Corcoran**
> Brian H. Corcoran
> Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.